**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| AMANDA BRUNER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| PERISHABLE SALES, INC. AND | ) | |
| GREGORY PELLEGRINO. | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Amanda Bruner ("Plaintiff" or "Bruner"), by and through her attorney, Matt Singer Law, LLC, files this Complaint against Defendants Perishable Sales, Inc. ("Perishable Sales") and Gregory Pellegrino ("Pellegrino") (collectively, "Defendants") and alleges as follows:

1.      Amanda Bruner worked for Defendant Perishable Sales, which is owned by Defendant Gregory Pellegrino. Bruner performed her job well; Pellegrino described Bruner less than two days before her termination as "very valuable to me." Bruner learned that a man who had her job title, who did the exact same work, was paid much more than her. She complained to her supervisor about the blatant sex-based discrepancy. Within an hour of Bruner's complaint, Pellegrino emailed Bruner, calling her to an emergency meeting at 9 a.m. the following workday, and griping that he did not want to spend the weekend "arguing" over "salaries" and "fighting off discriminatory claims." At the meeting, after Bruner again challenged the sex-based pay discrimination, Pellegrino summarily fired her.

1

2.     Defendants' actions violated the Federal and Illinois Equal Pay Acts, including their anti-retaliation provisions, as well as the Illinois Wage Payment and Collection Act ("IWCPA"). Plaintiff brings this suit to hold Defendants accountable for their unlawful practice of paying men more than women for equal work, and the blatantly retaliatory decision to terminate Plaintiff's employment.

## PARTIES, JURISDICTION AND VENUE

3.     Plaintiff's federal claims arise under the Equal Pay Act of 1963, 29 U.S.C. § 206(d).  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.[1]

4.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to this case occurred in this district.

## FACTUAL ALLEGATIONS

5.     Plaintiff Amanda Bruner worked for Defendant Perishable Sales between August 2019 and March 2022.

6.     Defendant Perishable Sales is a company owned by Pellegrino and headquartered in Arlington Heights, Illinois. The company distributes grocery

---

[1]     Contemporaneously with the filing of this Complaint, Plaintiff is filing a Charge of Discrimination with the Equal Employment Opportunity Commission and Illinois Department of Human Rights. She intends to amend her complaint to add claims under Title VII and the Illinois Human Rights Act once the relevant administrative agencies have issued a notice of right to sue.

items, such as deli meats and cheeses, to grocery stores and supermarkets in the Midwest. At all relevant times, Perishable Sales had more than 15 employees.

7.    Defendant Gregory Pellegrino is, and at all relevant times was, the sole owner of Perishable Sales.

8.    During Bruner's employment at Perishable Sales, Pellegrino personally made all major personnel decisions for the company, including setting salaries and bonuses, hiring, firing, and promotions. Perishable Sales did not employ a Director of Human Resources because Pellegrino made all such decisions himself.

9.    In August 2019, Pellegrino personally interviewed Bruner and offered her a Retail Sales Representative position at Perishable Sales.

10.    Via email, Bruner attempted to negotiate a higher salary. Pellegrino rejected Bruner's proposed salary but did agree in writing to increase the initial salary offer by $2,000.

11.    Bruner accepted Pellegrino's offer based on the $2,000 increase in salary offered.

12.    Bruner began working as a "Retail Sales Representative" at Perishable Sales in August 2019. As a "Retail Sales Representative," Bruner would travel to grocery stores that sold Perishable Sales products and assist the grocery store and deli counter employees with Perishable Sales' products and brands. For example, Bruner would check to make sure that Perishable Sales' products were priced appropriately, that they were being displayed appropriately and weren't expired.

Bruner would also inform grocery store personnel of new Perishable Sales products, special promotions, and the like.

13.     Bruner was one of several Retail Sales Representatives employed by Perishable Sales, all of whom performed the same job functions as Bruner. Retail Sales Representatives, including Bruner, were paid based on salary, not commission. All Retail Sales Representatives at Perishable Sales performed work requiring equal skill, effort, and responsibility, and their jobs were performed under similar working conditions.

14.     Bruner performed effectively as a Retail Sales Representative at Perishable Sales.

15.     For more than two years, Defendants paid Bruner less than the agreed-upon salary. Despite agreeing in writing to pay Bruner $2,000 more than the initial offer, Defendants instead paid Bruner based on the lower, original offer.

16.     In the fall of 2021, in recognition of Bruner's outstanding work performance, Defendants offered Bruner a small raise.

17.     At the time Defendants offered Bruner the raise, Bruner was told that she was not to discuss the raise or her salary with her colleagues.

18.      As a result of the discussion of her salary, Bruner discovered that she had been paid less than the agreed-upon salary for the entirety of her employment at Perishable Sales.

19.     Bruner raised the issue with Pellegrino, forwarding him the email exchange where Pellegrino offered, and Bruner accepted, the higher salary. Pellegrino responded to the email by promising to "make this right."

4

20.     Defendants subsequently paid Bruner a "bonus" that purported to equal the nominal difference between Bruner's promised salary and the underpaid salary. However, Defendants did not pay any interest or penalties on the underpayment required by the IWCPA. 820 ILCS 115/14(a).

21.     In essence, Defendants took an illegal, unilateral, interest-free loan from Plaintiff, for which she has never been compensated.

22.     In addition, Defendants maintained a strict, and illegal, policy of prohibiting their employees from discussing their salaries or compensation with each other. *See* 820 ILCS 112/10(b).

23.     Plaintiff's supervisor would regularly tell employees, including Bruner, not to discuss their compensation with one another.

24.     When informing employees of holiday bonuses at the end of the year, Pellegrino would instruct employees, including Bruner, via email not to discuss their compensation with other employees.

25.     Nonetheless, despite Defendants' illegal policy, Bruner learned that Defendants paid one of her male Retail Sales Representative colleagues—who had the same job title, worked on the same team, had the same role, and performed the exact same job responsibilities—a considerably higher salary than her and other female Retail Sales Representatives. The male colleague was hired into the Retail Sales Representative role after Bruner.

26.     In early March 2022, the higher-paid male Retail Sales Representative resigned and accepted a new position.

5

27. On Saturday, March 5, 2022, at around 3:30 p.m., Ms. Bruner's supervisor called her to discuss the male colleague's departure.

28. In response, Ms. Bruner raised concerns to her supervisor that Bruner had been severely underpaid compared to the man who was resigning.

29. During the same conversation, Ms. Bruner also challenged Perishable Sales' policy of prohibiting employees from discussing their compensation with each other and told her supervisor the policy was illegal.

30. Within an hour after Ms. Bruner raised these concerns to her supervisor, Pellegrino emailed Bruner, and two other women employed by Perishable Sales, calling Bruner to an emergency meeting at 9 a.m the following Monday.

31. In the email, Pellegrino wrote that Bruner and the two other women "are very valuable to me." Pellegrino also wrote that he did not want to spend the weekend "arguing" over "salaries" and "fighting off discriminatory claims."

32. At the March 7, 2022 meeting with Pellegrino and Bruner's supervisor, Bruner again complained about the pay disparities between herself, other female Retail Sales Representatives, and the male colleague who did the same job.

33. In addition, Bruner also challenged Defendants' policy of prohibiting employees from discussing pay with each other, and correctly explained that the policy was illegal.

34. Pellegrino responded by lamenting that "gender bias" had been brought up. He asked Bruner what she thought, and Bruner responded that "it

doesn't look great" that a male colleague was making more money for doing the same work as women with the same title.

35.     In response, Pellegrino told Bruner she was being "disruptive" and that he would "accept her resignation."

36.     When Bruner made clear that she wasn't resigning, Pellegrino terminated her employment.

37.     Bruner's employment at Perishable Sales was terminated on March 7, 2022 at 9:15 a.m.

38.     Thus, less than 48 hours after Bruner first complained to her supervisor about being underpaid on account of her sex, Defendants terminated her employment.

39.     As a direct and proximate result of the Defendants' conduct, Bruner has suffered wage and financial losses and damage to her career.

40.     As a direct and proximate result of Defendants' conduct, Bruner has suffered emotional and mental distress, loss of reputation, embarrassment and humiliation, loss of enjoyment of life, inconvenience, and other non-pecuniary losses.

## COUNT I

## PAY DISCRIMINATION (FEDERAL EQUAL PAY ACT )
### (Against All Defendants)

41.     Plaintiff realleges Paragraphs 1 through 40 and incorporates them by reference as though fully stated herein as part of Count I of this Complaint.

42.     The Federal Equal Pay Act, 29 U.S.C. § 206(d), prohibits employers from discriminating, "between employees on the basis of sex" by paying women less than men for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."

43.     Both Defendants were "employers" under the Federal Equal Pay Act. 29 U.S.C. § 203(a, d).

44.     Bruner was Defendants' employee under the Federal Equal Pay Act. 29 U.S.C. § 203(e)(1).

45.     Defendants discriminated against Bruner on the basis of sex by paying Bruner less than a male Retail Sales Representative for performing "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d).

46.     As a direct and proximate result of Defendants' discrimination against her, Bruner suffered damages. Bruner suffered damages each and every time she received a paycheck infected by the discriminatory pay discrepancy.

47.     Defendants had no "good faith" basis for paying Bruner less than her male colleague for equal work and lacked any reasonable basis for believing that

8

their conduct was legal. Therefore, liquidated damages are appropriate. 29 U.S.C. §§ 216(b), 260.

**COUNT II**
**RETALIATION (FEDERAL EQUAL PAY ACT)**
**(Against All Defendants)**

48.     Plaintiff realleges Paragraphs 1 through 40 and incorporates them by reference as though fully stated herein as part of Count II of this Complaint.

49.     The Federal Equal Pay Act prohibits retaliation against employees who complain about pay discrimination. 29 U.S.C. § 215(a)(3).

50.     Both Defendants were "employers" under the Equal Pay Act. 29 U.S.C. § 203(a, d).

51.     Bruner was Defendants' employee under the Equal Pay Act. 29 U.S.C. § 203(e)(1).

52.     Defendants retaliated against Bruner by terminating her employment because she complained that she was paid less than a male employee for equal work.

53.     As a direct and proximate result of Defendants' retaliation against her, Bruner suffered damages.

54.     Defendants had no "good faith" basis for firing Bruner because she complained about the pay discrepancy between her and a male colleague and lacked any reasonable basis for believing that their conduct was legal. Therefore, liquidated damages are appropriate. 29 U.S.C. §§ 216(b), 260.

## COUNT III
## PAY DISCRIMINATION (ILLINOIS EQUAL PAY ACT)
### (Against All Defendants)

55.     Plaintiff realleges Paragraphs 1 through 40 and incorporates them by reference as though fully stated herein as part of Count III of this Complaint.

56.     The Illinois Equal Pay Act, 820 ILCS 112/1, *et seq.*, prohibits employers from discriminating "between employees on the basis of sex by paying wages to an employee at a rate less than the rate at which the employer pays wages to another employee of the opposite sex for the same or substantially similar work on jobs the performance of which requires substantially similar skill, effort, and responsibility, and which are performed under similar working conditions." 820 ILCS 112/10(a).

57.     Both Defendants were "employers" under the Equal Pay Act. 820 ILCS 112/5.

58.     Bruner was Defendants' employee under the Equal Pay Act. 820 ILCS 112/5.

59.     Defendants discriminated against Bruner on the basis of sex by paying Bruner less than a male Retail Sales Representative for performing "the same or substantially similar work on jobs the performance of which requires substantially similar skill, effort, and responsibility, and which are performed under similar working conditions." 820 ILCS 112/10(a).

60.     As a direct and proximate result of Defendants' discrimination against her, Bruner suffered damages. Bruner suffered damages each and every time she received a paycheck infected by the discriminatory pay discrepancy.

10

61.    Defendants acted with malice and reckless indifference to Bruner's rights. Therefore, compensatory and punitive damages are appropriate. 820 ILCS 112/30(a).

## COUNT IV
## RETALIATION (ILLINOIS EQUAL PAY ACT)
### (Against All Defendants)

62.    Plaintiff realleges Paragraphs 1 through 40 and incorporates them by reference as though fully stated herein as part of Count IV of this Complaint.

63.    The Illinois Equal Pay Act, 820 ILCS 112/1, *et seq.*, prohibits employers from retaliating against their employees for complaining that the employee has not been paid in accordance with the law. 820 ILCS 112/35(b).

64.    The Illinois Equal Pay Act, 820 ILCS 112/1, *et seq.*, also prohibits employers from interfering with, restraining, or denying the exercise of or the attempt to exercise any right provided under this Act. 820 ILCS 112/10(b). In particular, employers are prohibited from "discharging or in any other manner discriminate against any individual for inquiring about, disclosing, comparing, or otherwise discussing the employee's wages or the wages of any other employee, or aiding or encouraging any person to exercise his or her rights under this Act." *Id.* Further, an employer may not "require an employee to sign a contract or waiver that would prohibit the employee from disclosing or discussing information about the employee's wages, salary, benefits, or other compensation." *Id.*

65.    Both Defendants were "employers" under the Illinois Equal Pay Act. 820 ILCS 112/5.

66. Bruner was Defendants' employee under the Equal Pay Act. 820 ILCS 112/5.

67. Defendants retaliated against Bruner in violation of the Illinois Equal Pay Act by terminating her employment because she complained that she was paid less than a male employee for equal work and about Defendants' illegal policy of prohibiting their employees from discussing or disclosing information about their compensation.

68. As a direct and proximate result of Defendants' retaliation against her, Bruner suffered damages.

69. As a result of Defendants' violation of the Illinois Equal Pay Act, Bruner is entitled to damages, including backpay, front pay, lost benefits, special damages, compensatory damages, and liquidated damages. 820 ILCS 112/30(a-5), 35.

70. Defendants acted with malice and reckless indifference to Bruner's rights. Therefore, compensatory and punitive damages are appropriate. 820 ILCS 112/30(a).

### COUNT V
### ILLINOIS WAGE PAYMENT AND COLLECTION ACT
### (Against All Defendants)

71. Plaintiff realleges Paragraphs 1 through 40 and incorporates them by reference as though fully stated herein as part of Count V of this Complaint.

72. The IWCPA, 820 ILCS 115/1, *et seq.*, requires prompt and full payment of wages. 820 ILCS 115/4.

73. Both Defendants were "employers" under the IWCPA. 820 ILCS 115/2, 13.

74. Bruner was Defendants' employee under the IWCPA. 820 ILCS 115/2.

75. Defendants did not timely pay Bruner her agreed-upon wages. In particular, for more than two years at the outset of her employment, Defendants paid Bruner wages that were $2,000/year less than the agreed-upon salary.

76. While Defendants belatedly paid Bruner a "bonus" purportedly to "make this right," Defendants paid no interest, nor the statutorily required penalties for underpayments. 820 ILCS 115/14(a).

77. As a result of Defendants' actions, Bruner suffered damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court find in her favor and against Defendants as follows:

a. Declare that the acts and conduct of Defendants are unlawful and violate the Federal Equal Pay Act, the Illinois Equal Pay Act and the Illinois Wage Payment and Collection Act;

b. Award Plaintiff the value of all compensation and benefits lost to date (backpay) as a result of Defendants' unlawful conduct;

c. Award Plaintiff the value of all compensation and benefits she will lose in the future (front pay) as a result of Defendants' unlawful conduct;

d. Award Plaintiff compensatory damages, including but not limited to damages for emotional pain, suffering, inconvenience, mental anguish,

loss of enjoyment of life, loss of reputation, and other non-pecuniary losses;

e.   Award Plaintiff liquidated damages under the Federal Equal Pay Act;

f.   Award Plaintiff special damages under the Illinois Equal Pay Act;

g.   Award Plaintiff liquidated damages under the Illinois Equal Pay Act;

h.   Award Plaintiff punitive damages due to Defendants' malicious conduct and/or Defendants' reckless or callous indifference to the statutorily protected rights of Plaintiff;

i.   Award Plaintiff prejudgment interest;

j.   Award Plaintiff attorneys' fees, costs, and disbursements; and

k.   Award Plaintiff such other make whole equitable, injunctive, and legal relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues of fact and damages triable in this action.

Respectfully submitted,

/s/ *Matthew J. Singer*

Matthew J. Singer
MATT SINGER LAW, LLC
77 W. Wacker Dr., Suite 4500
Chicago, Illinois 60601
Phone: (312) 248-9123
Matt@MattSingerLaw.com

14